UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

JENNIFER MOORE,                                              :

                  Plaintiff,                      :          3:19-CV-30007-MGM-KAR

                  v.                              :

BRITISH AIRWAYS, PLC, a foreign corporation,    :

                  Defendant.                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


**MEMORANDUM OF LAW OF DEFENDANT BRITISH AIRWAYS
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...............................................................................................1

STATEMENT OF FACTS .....................................................................................................2

STATEMENT OF JURISDICTION.........................................................................................5

SUMMARY JUDGMENT STANDARD ..................................................................................6

ARGUMENT.........................................................................................................................7

   I. The Montreal Convention Exclusively Governs Plaintiff's Claims Arising from the
   Subject Incident and Preempts Plaintiff's State Law Claim ...............................................7

      A.  Plaintiff's Claims Are Governed by the Montreal Convention ...............................7

      B.  The Montreal Convention Exclusively Governs the Rights and Liabilities of
         the Parties and Preempts Plaintiff's State Law Claim ...........................................8

   II. British Airways Cannon Be Liable for Plaintiff's Injuries Because They Were Not
   Caused by an "Accident" Within The Meaning of Article 17 of the Montreal
   Convention ....................................................................................................................10

      A.  Summary Judgment Should Be Granted Because Plaintiff Cannot Point to
         Any Evidence Demonstrating the Occurrence of an Unexpected or Unusual
         Event or Happening.............................................................................................11

      B.  Summary Judgment Should Be Granted Because Plaintiff Cannot Establish
         That the Event Related to an Abnormality in the Operation of the Aircraft .........16

CONCLUSION....................................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acevedo-Reinoso v. Iberia Lineas Aereas de Espana S.A.*,
449 F.3d 7 (1st Cir. 2006)..................................................................................7, 8

*Air France v. Saks*,
470 U.S. 392 (1985) .......................................................................... 9, 10, 11, 14

*and McCarthy v. Am. Airlines, Inc.*,
No. 07-61016-CIV, 2008 WL 2704515 (S.D. Fla. 2008)....................................11

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ...............................................................................................6

*Barros-Villahermosa v. United States*,
642 F.3d 56 (1st Cir. 2011) ....................................................................................6

*Blake v. Am. Airlines*,
245 F.3d 1213 (11th Cir. 2001)..............................................................................7

*Blansett v. Cont'l Airlines, Inc.*,
379 F.3d 177 (5th Cir. 2004) ...............................................................................14

*Celotex Corp. v. Carett*,
477 U.S. 317 (1986) ...............................................................................................6

*Dagi v. Delta Air Lines, Inc.*,
352 F. Supp. 3d 116 (D. Mass. 2018), *aff'd sub nom Dagi v. Delta Airlines,
Inc.*, 961 F.3d 22 (1st Cir. 2020).............................................................................9

*In re Deep Vein Thrombosis and Air Travel Group Litigation* ("*Re DVT*")...............................14

*Diaz Lugo v. Am. Airlines Inc.*,
686 F. Supp. 373 (D.P.R.1988)............................................................................11

*Dizon v. Asiana Airlines, Inc.*,
240 F. Supp. 3d 1036 (C.D. Cal. 2017)................................................................11

*Eastern Airlines, Inc. v. Floyd*,
499 U.S. 530 (1991) ...............................................................................................9

*Eke v. Deutsche Lufthansa*,
No. CV 13-11099-GAO, 2013 WL 12201891 (D. Mass. Oct. 2, 2013) ..................7

*El Al Israel Airlines, Ltd. v. Tseng*,
525 U.S. 155 (1999) .......................................................................................6, 8, 9

*Fulop v. Malev Hungarian Airlines*,
175 F. Supp. 2d 651 (S.D.N.Y. 2001) ..................................................................11

*Garcia Ramos v. Transmeridian Airlines, Inc.*,
385 F. Supp. 2d 137 (D.P.R. 2005)......................................................................16

*Gezzi v. British Airways, PLC,*
    991 F.2d 603 (9th Cir. 1993) .................................................................................11

*Goodwin v. British Airways PLC,*
    No. 09-10463-MBB, 2011 WL 3475420 (D. Mass. Aug. 8, 2011) ..............................*passim*

*Gotz v. Delta Air Lines, Inc.,*
    12 F. Supp. 2d 199 (D. Mass. 1998) ................................................... 10, 11, 12, 16

*Gustafson v. Am. Airlines, Inc.,*
    658 F. Supp. 2d 276 (D. Mass. 2009)................................................................8

*Langadinos v. Am. Airlines, Inc.,*
    199 F.3d 68 (1st Cir.2000).............................................................................10

*Lujan v. National Wildlife Federation,*
    497 U.S. 871 (1990) ......................................................................................6

*Maxwell v. Aer Lingus Ltd.,*
    122 F. Supp. 2d 210 (D. Mass. 2000)........................................................... 15, 16

*Nwokeji v. Arik Air,*
    No. 15-10802, 2017 WL 4167433 (D. Mass. Sept. 20, 2017)................................9

*In re Ralar Distribs., Inc.,*
    4 F.3d 62 (1st Cir. 1993).................................................................................6

*Rivera-Marcano v. Normeat Royal Dane Quality A/S,*
    998 F.2d 34 (1st Cir. 1993).............................................................................6

*Sanchez Morrabal v. Omni Air Servs., Co.,*
    497 F. Supp. 2d 280 (D.P.R. 2007)..................................................................8

*Triangle Trading Co., Inc. v. Robroy Indus., Inc.,*
    200 F.3d 1 (1st Cir. 1999).............................................................................6

*Ugaz v. Am. Airlines, Inc.,*
    576 F. Supp. 2d 1354 (S.D. Fla. 2008)............................................................11

*Wilson v. Moulison N. Corp.,*
    639 F.3d 1 (1st Cir. 2011).............................................................................6

**Statutes**

28 U.S.C. § 1331.............................................................................................5

**Other Authorities**

Convention for the Unification of Certain Rules Relating to International Carriage
by Air, Done at Montreal, Canada, on 28 May 1999 ("Montreal Convention"),
reprinted in S. Treaty Doc. 106-45, CCH Av. L. Rep. ¶ 27,400-59, 1999 WL
33292734 (1999).......................................................................................*passim*

Federal Rules of Civil Procedure Rule 56 ............................................... 1, 5, 6

U.S. CONST. art. VI, cl. 2.................................................................................6

## PRELIMINARY STATEMENT

Defendant British Airways, PLC, ("British Airways") respectfully submits this Memorandum of Law in support of its Motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting it summary judgment and dismissing Plaintiff's Complaint ("Complaint") in its entirety.

This is an action by Plaintiff Jennifer Moore for damages she allegedly sustained when she fell while disembarking on a mobile staircase at London Heathrow Airport as part of round-trip transportation from the United States. Plaintiff's claims are governed by the Montreal Convention,[1] a treaty of the United States that exclusively governs the rights and liabilities of passengers and air carriers in international transportation, and precludes all other causes of action. A passenger may recover damages under the Montreal Convention only if he/she proves that an "accident" within the meaning of Article 17 of the Montreal Convention caused a bodily injury.

Summary judgment should be granted because: (1) Plaintiff's claims are governed exclusively the Montreal Convention and therefore her state law negligence claim is preempted; (2) Plaintiff's own expert confirmed that she cannot demonstrate that an "accident" occurred, *i.e.*, an unusual or unexpected event external to her that caused her injuries, because Plaintiff's fall resulted entirely from her misjudgment of a bottom step of a mobile staircase; and (3) there was no "accident" because as Plaintiff's expert also confirmed, the mobile staircase at issue was functioning exactly as intended, and had no abnormality or malfunction. Accordingly, British Airways cannot be liable to Plaintiff as a matter of law.

---

[1] The Convention for the Unification of Certain Rules Relating to International Carriage by Air, Done at Montreal, Canada, on 28 May 1999 ("Montreal Convention"), reprinted in S. Treaty Doc. 106-45, CCH Av. L. Rep. ¶ 27,400-59, 1999 WL 33292734 (1999).

## STATEMENT OF FACTS

On September 14 and 15, 2018, Plaintiff was traveling as a passenger on British Airways Flight 202 from Boston, Massachusetts, to London, England, as part of round-trip transportation. *See* Complaint, attached as Exhibit A to the Declaration of Anthony U. Battista, dated August 11, 2020 ("Battista Decl."), at ¶¶ 13, 23.

Plaintiff's colleague who was traveling with her, Tammy Burnett, testified that upon arrival at London Heathrow Airport, the crew informed passengers that they would be disembarking via a mobile staircase, rather than a jet bridge. *See* Deposition of Tammy Burnett ("Burnett Dep."), attached as Exhibit C to the Battista Decl., at 17:4-23. British Airways routinely uses mobile staircases to disembark passengers from aircraft at Heathrow Airport. *See* Deposition of James Pearson ("Pearson Dep."), attached as Exhibit D to the Battista Decl., at 19:13-20:20.[2]

While passengers were leaving the aircraft, a crew member was stationed at the top of the stairs advising the passengers to "watch [their] step." Burnett Dep. at 20:9-11. Plaintiff descended the right side of staircase while holding the handrail and carrying two pieces of hand baggage. *See* Deposition of Jennifer Moore, attached as Exhibit F to the Battista Decl. ("Moore Dep."), at 33:6-9; 33:21-23; 37:1-12. Plaintiff alleges that she fell at the bottom of the staircase because the distance between the final step and the ground was greater than the distance between the previous steps, and she did not anticipate this difference. *See* Compl. at ¶ 15; Moore Dep. at 37:24-38:5. According to the Heathrow Incident Report and British Airways Incident Report, Plaintiff misjudged and underestimated the height of the final step, causing her to lose her balance, fall,

---

[2] A photograph of the staircase is attached as Exhibit E to the Battista Decl. Plaintiff testified that the photograph depicts the staircase at it looked on September 15, 2018. *See* Deposition of Jennifer Moore, attached as Exhibit F to the Battista Decl. ("Moore Dep."), at 34:3-17.

and injure her ankles.  *See* British Airways Incident Report, attached as Exhibit G to the Battista Decl., at 2; Heathrow Incident Report, attached as Exhibit H to the Battista Decl., at 1.

Plaintiff did not make physical contact with anyone else while she was descending the staircase; passengers were descending the staircase in a single file line, and were not pushing or otherwise jostling each other.  Moore Dep. at 34:18-35:1; 36:19-24; Burnett Dep. at 20:19-21. The incident occurred during the daytime, during which time there was no precipitation, and no garbage, liquid, or other debris on the staircase.  Moore Dep. at 38:6-19; Burnett Dep. at 20:22-21:7.

Wayne Pitt, a British Airways Safety Officer, arrived at the scene of the incident and observed that the stairs were "correctly positioned" and had a "good grip on them."  Deposition of Wayne Pitt, attached as Exhibit I to the Battista Decl. ("Pitt Dep."), at 8:20-25.  Additionally, the Cabin Service Director of the flight testified with respect to the mobile staircase that "everything was serviceable, there was nothing abnormal."  *See* Deposition of Sean Hinnigan, attached as Exhibit K to the Battista Decl. ("Hinnigan Dep."), at 12:16-13:3.  Based on his experience and observation of the staircase, Mr. Hinnigan wrote in his report that "the positioning of the steps on to plane did not look untoward . . . No equipment appeared to be defective."  *See* Battista Decl. Exhibit G at 11.

In accordance with British Airways policy, Mr. Pitt took the staircase out of service following the incident.  *See* Pitt Dep. at 8:10-19.  A formal inspection of the staircase conducted later that day confirmed there were no problems or abnormalities with the mobile staircase.  *Id.* at 31:3-13; *see also* Babcock Critical Services Ltd. Report, attached as Exhibit J to the Battista Decl.

The parties conducted an after-incident physical inspection of the subject mobile staircase

3

at Heathrow Airport, during which time the staircase was set up according to the same specifications in use at the time of the incident, *i.e.*, the same height and hydraulics settings that would have been applied for use with the B777 aircraft used for the subject transportation. Declaration of David Worthy, dated August 6, 2020 ("Worthy Decl."), ¶¶ 4-5.

Plaintiff hired an expert witness to opine on potential liability.  Plaintiff's expert, Chad Phillips, drafted an expert report based on the information provided to him from Plaintiff's counsel and photographs provided from the post-incident inspection. Mr. Phillips concluded in his report that staircase as put into place by British Airways was dangerous in a manner that caused Plaintiff's injuries.  *See* Chad Phillips Report, attached as Exhibit L to the Battista Decl. ("Phillips Report.") at 18.

During Mr. Phillips' deposition, however, he testified that based on his review of the photographs of the incident staircase taken immediately after the incident he could not point to anything that British Airways should have done differently when positioning the staircase.

Q. Is there anything that you can point to in Exhibit 5 that shows that BA should have set up the stairs differently?

A. Is there a way to zoom in here?

Q. Yes.

A. Okay. As far as I can see, no….

*See* Deposition of Chad Phillips, attached as Exhibit M to the Battista Decl. ("Phillips Dep."), at 32:7-12; *see also* Photographs Identified in Phillips Deposition as Exhibit 5, attached as Exhibit N to the Battista Decl.

Furthermore, when asked for support for his conclusion that the stairs were dangerous he could only point to the fact that the estimated distance between the final step and the ground was a different height than the stairs that preceded that final step, a condition that was normal for this

type of staircase.  *See* Phillips Dep. at 52:23-53:22.  Based on Mr. Phillips' review of testimony of British Airways' personnel and Plaintiff's testimony, Mr. Phillips could not point to any indication that the distance between the final step and the ground was abnormal:

> Q. Did any of the testimony that you read say that the step -- the bottom step was of an abnormal height?
>
> A. Yes. Let me just go back here just to refresh my memory. The deposition of Tammy Burnett, the deposition of Denisa Sen – I'm going to butcher this name -- Senoussi, the deposition of Wayne Pitt, and the deposition of Jennifer Moore all said that the bottom step was different than the other steps.
>
> Q. What I asked you is, Did any of the testimony you read say that the step was abnormal? not that it was different.
>
> A. The testimonies did not say that they were abnormal.
>
> Q. Did they say that they were unusual?
>
> A. Not in the testimony. I don't believe that language was used.

*See* Phillips Dep., at 54:9-55:1. In other words, while the distance between the step and the ground may have been greater than the steps that preceded it, Plaintiff can come forward with no evidence that the greater distance was abnormal or unusual, or that any part of the mobile staircase was functioning abnormally at the time of the incident.

The Complaint contains two Counts: first, a claim under the Montreal Convention; and second, a state-law claim for negligence.

## STATEMENT OF JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the Montreal Convention, a treaty of the United States.

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A defendant such as British Airways that seeks summary judgment on a cause of action proffered by a plaintiff must demonstrate the absence of a genuine issue of material fact.  This can be accomplished by either submitting summary judgment evidence that negates the existence of a material element of Plaintiff's claim or by showing that there is no evidence to support an essential element of Plaintiff's cause of action.  *See Celotex Corp. v. Carett,* 477 U.S. 317, 322-25 (1986).   Once, as demonstrated below, British Airways' initial burden is satisfied, the burden shifts to the Plaintiff to articulate specific facts validating the existence of a genuine issue of material fact.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990).

In doing so, it is well established that the Plaintiff "is required to produce specific facts, in suitable evidentiary form, to . . . establish the presence of a trialworthy issue." *Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir 1999) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(e).  "Mere allegations, or conjecture unsupported in the record, are insufficient." *Barros-Villahermosa v. United States*, 642 F.3d 56, 58 (1st Cir. 2011) (quoting *Rivera-Marcano v. Normeat Royal Dane Quality A/S*, 998 F.2d 34, 37 (1st Cir. 1993)); *see also Wilson v. Moulison N. Corp*., 639 F.3d 1, 6 (1st Cir. 2011) ("A properly supported summary judgment motion cannot be defeated by conclusory allegations, improbable inferences, periphrastic circumlocutions, or rank speculation."). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment for

the moving party." *In re Ralar Distribs., Inc.*, 4 F.3d 62, 67 (1st Cir. 1993).  Therefore, Plaintiff

must offer "concrete evidence from which a reasonable juror could return a verdict in [her]

favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT
## I.

### The Montreal Convention Exclusively Governs Plaintiff's Claims
### Arising from the Subject Incident and Preempts Plaintiff's State Law Claim

**A.**   **Plaintiff's Claims Are Governed by the Montreal Convention**

The Montreal Convention applies to "all international carriage of persons, baggage or cargo

performed by aircraft for reward."  Montreal Convention, art. 1(1).  As a treaty of the United States,

the Montreal Convention is the supreme law of the land.  *See* U.S. CONST. art. VI, cl. 2; *see also El

Al Israel Airlines, Ltd. v. Tseng*, 525 U.S. 155, 167 (1999); *Acevedo-Reinoso v. Iberia Lineas

Aereas de Espana S.A.*, 449 F.3d 7, 11 (1st Cir. 2006).[3]  Indeed, Plaintiff alleges in the Complaint

that this action is governed by the Montreal Convention.  *See* Exhibit A at ¶ 1.

Article 1(2) of the Montreal Convention defines "international carriage" as including:

> any carriage in which, according to the agreement between the
> parties, the place of departure and the place of destination, whether
> or not there be a break in the carriage or a transshipment, are situated
> either within the territories of two States Parties, or within the
> territory of a single State Party if there is an agreed stopping place
> within the territory of another State, even if that State is not a State
> Party.

---

[3] Because the Montreal Convention came into force more recently than the Warsaw Convention, courts rely on cases interpreting similar provisions of the earlier Warsaw Convention where the equivalent provision in the Montreal Convention is substantively the same. *See, e.g. Eke v. Deutsche Lufthansa*, No. CV 13-11099-GAO, 2013 WL 12201891, at *7 (D. Mass. Oct. 2, 2013) ("case law interpreting provisions of the Warsaw Convention applies to cases interpreting 'substantively similar' provisions of the Montreal Convention.").

Montreal Convention, Article 1(2).   In other words, the Montreal Convention applies to international transportation where the original place of departure and the final place of destination are within two State Parties to the Montreal Convention, or, in the event of round-trip international transportation, from the territory of a State Party to the Montreal Convention.   *See, e.g.*, *Blake v. Am. Airlines*, 245 F.3d 1213, 1215 n.2 (11th Cir. 2001) (noting that, "[i]n the case of a round-trip ticket, the place of departure and the place of destination are the same").

Here, the agreement between Plaintiff and British Airways (i.e., the passenger ticket) provided for roundtrip transportation from the United States with a stopping place in the United Kingdom, among other places.   *See* Exhibit A at ¶ 23.   The United States is a State Party to the Montreal Convention.   *See* U.S. Department of State, Treaties In Force at 551 (2018).   Accordingly, the transportation was "international" as defined by Article 1 of the Montreal Convention. Therefore, this action is governed exclusively by the Montreal Convention.

**B.**      **The Montreal Convention Exclusively Governs the Rights and Liabilities of the Parties and Preempts Plaintiff's State Law Claim**

The Montreal Convention applies to a passenger's transportation, and the provisions of the Montreal Convention exclusively govern the rights and liabilities of the parties.   *Tseng,* 525 U.S. at 161.   The substantive scope of the Montreal Convention is set forth in Article 17, which provides:

> The carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Montreal Convention, art. 17(1).   Additionally, Article 29 of the Montreal Convention provides:

> In the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, can only be brought subject to the conditions and such limits of liability as are set out in this Convention.

8

Montreal Convention, art. 29.

Applying *Tseng* and interpreting Articles 29 and 17, the First Circuit has explained: "[t]he Convention is preemptive: a carrier is not subject to liability under local law for passenger injuries 'covered by' the Convention, that is, 'all personal injury cases stemming from occurrences on board an aircraft or in embarking or disembarking'" in international transportation. *Acevedo-Reinoso*, 449 F.3d at 11 (quoting *Tseng*, 525 U.S. at 168); *see also Sanchez Morrabal v. Omni Air Servs., Co.*, 497 F. Supp. 2d 280, 284 (D.P.R. 2007) (explaining that when the Convention is found to apply, plaintiffs "cannot set forth their claims under any other law").

When the Montreal Convention applies to a particular case, an air carrier may be liable to a passenger only in accordance with the terms of the Convention. *See Acevedo-Reinoso*, 449 F.3d at 13. Thus, recovery of damages for a personal injury sustained on board an aircraft or during embarkation or disembarkation during international transportation, "if not allowed under the Convention, is not available at all." *Tseng*, 525 U.S. at 161; *see also Gustafson v. Am. Airlines, Inc.*, 658 F. Supp. 2d 276, 280 (D. Mass. 2009) (explaining that the Montreal Convention "preempts the remedies of signatory's domestic law, whether or not the application of the Convention will result in recovery in a particular case") (internal quotations omitted); *Nwokeji v. Arik Air*, No. 15-10802, 2017 WL 4167433, at *9 (D. Mass. Sept. 20, 2017) (explaining that "[a] passenger whose claim implicates, but is not compensable under the Montreal Convention, has no recourse to an alternate remedy"); *Dagi v. Delta Air Lines, Inc.*, 352 F. Supp. 3d 116, 118 (D. Mass. 2018), *aff'd sub nom Dagi v. Delta Airlines, Inc.*, 961 F.3d 22 (1st Cir. 2020).

Plaintiff claims that she was injured during disembarkation of the subject aircraft. *See*

9

Compl. at ¶ 1. This occurrence falls within the scope of the Montreal Convention.  Accordingly, the provisions of the Montreal Convention apply to Plaintiff's transportation and exclusively govern the rights and liabilities of the parties.  *See Tseng*, 525 U.S. at 161.  British Airways therefore cannot be subject to claims arising under Massachusetts common law.  Accordingly, Count II should be dismissed.

**II.**
**British Airways Cannot Be Liable for Plaintiff's Injuries**
**Because They Were Not Caused by an "Accident" Within**
**The Meaning of Article 17 of the Montreal Convention**

In an action arising under the Montreal Convention, Plaintiff has the burden of establishing the occurrence of an "accident" within the meaning of Article 17, the *sine qua non* for imposition of liability under the Convention.  *See Tseng*, 525 U.S. at 162; *Air France v. Saks*, 470 U.S. 392, 405 (1985).  In other words, "an air carrier is liable for passenger injury only when three conditions are satisfied: (1) there has been an accident, in which (2) the passenger suffered [death or bodily injury], and (3) the accident took place on board the aircraft or in the course of operations of embarking or disembarking."  *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 535-36 (1991).  The Montreal Convention does not impose a *per se* rule of liability on an air carrier for every occurrence that results in an injury to a passenger; rather, the pertinent issue is whether an "accident" occurred within the meaning of the Montreal Convention.  *Saks*, 470 U.S. at 405-06 (distinguishing causes that are "accidents" from causes that are "occurrences").

While the (old) Warsaw and (new) Montreal Conventions do not define what type occurrence is considered an "accident" under Article 17, the U.S. Supreme Court, in *Saks*, defined an "accident" as follows:

> We conclude that liability under Article 17 of the Warsaw
> Convention arises only if a passenger's injury is caused by an

10

> *unexpected or unusual event or happening that is external to the*
> *passenger.*

470 U.S. at 405 (emphasis added).  The *Saks* Court further held that:

> The "accident" requirement of Article 17 . . . involves an inquiry
> into the nature of the event which *caused* the injury rather than the
> care taken by the airline to avert the injury.

*Id.* at 407 (emphasis in original).

  This Court follows a two-prong test to determine whether an "accident" has occurred

within the meaning of the Montreal Convention.  *See Goodwin v. British Airways PLC*, No. 09-

10463-MBB, 2011 WL 3475420, at *3 (D. Mass. Aug. 8, 2011) (citing *Gotz v. Delta Air Lines,*

*Inc.*, 12 F. Supp. 2d 199, 201 (D. Mass. 1998)).  A plaintiff must show that "(1) an unusual or

unexpected event that was external to [the plaintiff] occurred, and (2) this event was a

malfunction or abnormality in the aircraft's operation."  *Goodwin*, 2011 WL 3475420, at *4.

**A.**  <u>**Summary Judgment Should Be Granted Because Plaintiff Cannot Point to Any**</u>
   <u>**Evidence Demonstrating the Occurrence of an Unexpected or Unusual Event or**</u>
   <u>**Happening**</u>

  "The first prong of the analysis under the Montreal Convention requires that an 'accident'

involve an unexpected or unusual event or happening that is external to the passenger."

*Goodwin*, 2011 WL 3475420, at *4 (citing *Saks*, 470 U.S. at 397-400) (internal quotation marks

omitted); *see also Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 70-71 (1st Cir.2000); *Gotz*, 12

F. Supp. 2d at 201-02).  An "accident" has not occurred "when the injury indisputably results

from the passenger's own internal reaction to the usual, normal, and expected operation of the

aircraft." *Saks*, 470 U.S. at 392.  Courts view the circumstances of the incident objectively; thus,

a plaintiff's subjective belief as to whether an event or occurrence was "unusual" or

"unexpected" has no bearing on the evaluation.  *See Gotz*, 12 F. Supp. 2d at 202; *see also Dizon*

*v. Asiana Airlines, Inc.*, 240 F. Supp. 3d 1036, 1044 (C.D. Cal. 2017) (stating that "the Court

does not view the evidence from Plaintiff's perspective—it examines the circumstances objectively"); *Fulop v. Malev Hungarian Airlines*, 175 F. Supp. 2d 651, 665 (S.D.N.Y. 2001) (explaining that *Saks* requires a court to examine the circumstances objectively).

Whether an "accident" occurred depends on whether the *cause* of the injury was objectively unexpected or unusual, not whether the *occurrence* of the injury was unexpected. *See Gotz*, 12 F. Supp. 2d at 202. For example, in *Gotz*, the plaintiff was injured when another passenger rose to retrieve an item from the overhead baggage compartment, startling plaintiff as he was attempting to put his own bag in the compartment. *Id.* at 200. The court held that this incident was not an "accident" under the Montreal Convention because there was no evidence that a fellow passenger's unanticipated rising to retrieve an item from an overhead compartment was unusual or unexpected. *Id.* at 202. In so holding, the court expressly rejected the materiality of "a plaintiff's subjective expectations," reasoning that in another case, "it [was] the unusual nature of this event – not the passenger's subjective expectation – that qualified it as a Warsaw accident." *Id.* (citing *Diaz Lugo v. Am. Airlines Inc.*, 686 F. Supp. 373 (D.P.R.1988)).

Cases in which a fall on a staircase is considered an "accident" typically involve an outside force or influence which causes the passenger to fall. *Compare Gezzi v. British Airways, PLC*, 991 F.2d 603, 604 (9th Cir. 1993) (holding that the presence of water on staircase connecting a terminal to the tarmac constituted an accident) *and McCarthy v. Am. Airlines, Inc.*, No. 07-61016-CIV, 2008 WL 2704515, at *5 (S.D. Fla. 2008) (holding that the combination of passenger being directed to exit the aircraft to gate-check his baggage and being touched by a flight attendant, causing him to lose his balance on the aircraft stairs, constituted an accident) *with Ugaz v. Am. Airlines, Inc.*, 576 F. Supp. 2d 1354, 1366 (S.D. Fla. 2008) (holding that the inoperability of an escalator did not amount to an accident because there was no foreign

12

substance on the stairs, jostling of passengers or other outside influence that caused plaintiff to fall "apart from her own decision to climb an acknowledged inoperable escalator"). *See also Goodwin*, 2011 WL 3475420, at *7 (holding that being bumped by another passenger, resulting in the plaintiff's foot sliding between the jet bridge and aircraft door, was an unexpected and unusual event external to the passenger).[4]

In this case, Plaintiff cannot show the existence of an objectively unusual or unexpected event or occurrence that was external to her. Plaintiff testified that she fell when she "stepped down and it was further down than *I* was expecting." Moore Dep. 37:24-38:5 (emphasis added). However, the "accident" analysis is an objective one, and Plaintiff's subjective expectations have no bearing on whether an "accident" occurred. *See Gotz*, 12 F. Supp. 2d at 202. Plaintiff was not injured as a result of an external force such as physical conduct with another passenger, inclement weather, or the existence of a foreign substance or debris on the staircase. Moore Dep. at 33:18-23, 34:18-35:1, 36:19-24, 38:6-19; Burnett Dep. at 20:19-21:7. Indeed, no other passenger was injured during disembarkation of the subject stairs. Burnett Dep. 23:2-5; 23:23-24:2.

Plaintiff's expert, Chad Phillips, could not identify any aspect of the staircase that was objectively unusual or unexpected on the date of the incident. *See, e.g.*, Phillips Dep. at 32:7-12; 69:24-72:14; 119:8-22; 123:1-12. Rather, Mr. Phillips testified at his deposition that whether the distance between the final step and the ground was abnormal "depends on who or what you consider abnormal" – an evaluation based entirely on the subjective experience and perception of the user. *Id.* at 69:24-71:21.

---

[4] However, as discussed in greater detail below, the *Goodwin* court ultimately held that no "accident" occurred because plaintiff could not meet the second prong of the "accident" analysis.

13

Mr. Phillips could not provide any evidence to support his conclusion that the stairs were dangerous.  He could only point to the fact that the estimated distance between the final step and the ground was a different height – a fact that is normally present in mobile air staircases.  *See* Phillips Dep., at 52:23-53:22.  Based on Plaintiff's expert review of testimony of British Airways personnel, Plaintiff's expert could not point to any indication that the distance between the final step and the ground was abnormal.

> Q. Did any of the testimony that you read say that the step – the bottom step was of an abnormal height?
>
> A. Yes. Let me just go back here just to refresh my memory. The deposition of Tammy Burnett, the deposition of Denisa Sen – I'm going to butcher this name – Senoussi, the deposition of Wayne Pitt, and the deposition of Jennifer Moore all said that the bottom step was different than the other steps.
>
> Q. What I asked you is, Did any of the testimony you read say that the step was abnormal? not that it was different.
>
> A. The testimonies did not say that they were abnormal.
>
> Q. Did they say that they were unusual?
>
> A. Not in the testimony. I don't believe that language was used.

*See* Phillips Dep., at 54:9-55:1. Mr. Phillips only points to the testimony of BA personnel and Ms. Burnett stating that the distance between the last step and the ground was greater than the distance between other steps (*id.* at 111:10-112:1) – a condition which was duplicated during the parties' inspection of the staircase.  But a different distance between the ground and the other steps is a common, usual condition for mobile air staircases.  *See* Adam Dershowitz Report, attached as Exhibit O to the Battista Decl. ("Dershowitz Report.") at 8.

Further, Mr. Phillips could not form any conclusions concerning whether the condition of the subject mobile staircase was different from other staircases of the same make and model as opposed to the subject staircase  *See* Phillips Dep. at 125:7-12.  Mr. Phillips also confirmed that

14

there is no evidence that British Airways employees failed to adhere to its policies and procedures regarding the use of a mobile staircase when the subject incident occurred. *Id.* at 109:24-112:16.

In light of the lack of any problem, or anything unusual or unexpected associated with the mobile staircase, Plaintiff's position, and that of Mr. Phillips, appears to be that British Airways should have warned Plaintiff concerning the height difference between the final step and the ground. However, Plaintiff cannot point to any governmental or other applicable requirement that air carriers issue warnings in connection with the use of the final step on a mobile staircase. *See Blansett v. Cont'l Airlines, Inc.*, 379 F.3d 177, 182 (5th Cir. 2004) (holding that it is "not an unexpected or unusual decision for [an air carrier] merely to cleave to the exclusive list of warnings required of it by the agency that has regulatory jurisdiction over its flights"). Additionally, Plaintiff also cannot show that British Airways has an internal policy that required issuance of a warning about the height difference, and Plaintiff cannot proffer any evidence that it is industry standard to issue such warnings. Accordingly, there was nothing objectively unexpected or unusual about the mobile staircase at issue. Rather, Plaintiff was injured as a result of her "own internal reaction to the usual, normal, and expected operation of the aircraft." *Saks*, 470 U.S. at 392. [5]

---

[5] Further support of this point is found in United Kingdom case law where the Court held when considering the normal positioning of economy class seating that "it is simply not possible to apply to a state of affairs, or an omission to act, [as] the test that is relevant to deciding whether an event is an accident." *See In re Deep Vein Thrombosis and Air Travel Group Litigation* ("*Re DVT*") [2006] 1 AC 495. Another such example is found in *Barclay –v- British Airways* [2008] EWCA Civ 1419, [2010] QB 187, where the plaintiff slipped on a plastic strip embedded in the floor of the aircraft and sustained bodily injury. The strip was a standard fitting and the cabin environment was in normal working order. The Court concluded that "article 17(1) contemplates, by the term 'accident', a distinct event, not being any part of the usual, normal and expected operation of the aircraft, which happens independently of anything done or omitted by the passenger." *Id.* As such, Plaintiff's argument that a warning should have

15

Finally, to the extent Plaintiff advances the argument that the use of a mobile staircase itself is an "accident," that argument fails as well. The evidence demonstrates that there is nothing objectively unexpected or unusual about using a mobile staircase rather than a jet bridge, to disembark passengers from an aircraft at Heathrow Airport. In fact, during his deposition, the First Officer of the subject flight testified that using a mobile staircase is "very normal and very frequent" and also called it "incredibly normal." *See* Pearson Dep. at 20:13-20. Furthermore, Plaintiff's own expert, Mr. Phillips confirmed that air carriers commonly use a mobile staircase to disembark passengers when a jet bridge is unavailable. *See* Phillips Dep. at 83:18-84:3. Plaintiff has no evidence in the record to contradict this conclusion.

For these reasons, Plaintiff cannot establish that her injuries were caused by an unusual or unexpected event or occurrence that was external to her, and therefore her claims are not an "accident" within the meaning of the Montreal Convention.

**B.** **Summary Judgment Should Be Granted Because Plaintiff Cannot Establish That the Event Related to an Abnormality in the Operation of the Aircraft**

"The second prong of the accident analysis requires that the unexpected or unusual event relate to the operation of the aircraft in order for it to be an 'accident' under the Montreal Convention." *Goodwin*, 2011 WL 3475420, at *5. "Events causing injury that relate to the aircraft's operation include where there is direct flight crew involvement." *Goodwin*, 2011 WL 3475420, at *5 (citing *Maxwell v. Aer Lingus Ltd.*, 122 F. Supp. 2d 210, 213 (D. Mass. 2000)). The event also must have been a malfunction or abnormality in the aircraft's, or in this case, aircraft's mobile staircase's, operation. *See Goodwin*, 2011 WL 3475420, at *4.

---

been given about the last step despite its normal state of affairs also fails under persuasive United Kingdom case law and further supports British Airways' motion for summary judgment.

The *Maxwell* court explained that under the flight crew involvement standard, an air carrier is liable in those cases "in which airline personnel have either facilitated a passenger's tort or have themselves committed a tort in connection with the operation of the flight," such as a flight attendant's over-service of alcohol, improper application of first aid equipment, failure to respond to passenger's request for help, spilling coffee, or failing to remove a hypodermic needle from a seat. *See Maxwell*, 122 F. Supp. 2d at 212 (citing and collecting cases).[6]

In *Goodwin*, this Court rejected the argument that the second prong is satisfied when the incident merely occurred in front of a flight attendant, reasoning that "the mere passive presence of flight crew is insufficient to establish that an incident is related to the operation of an aircraft." *Goodwin*, 2011 WL 3475420, at *5 (noting that plaintiff did not "contend that the airline directly caused her injuries, nor does she aver that she sought any affirmative assistance from the flight crew"); *see also Gotz*, 12 F. Supp. 2d at 204 (holding that the flight attendant's overseeing of stowage of baggage in the overhead bins did not satisfy the second prong); *Garcia Ramos v. Transmeridian Airlines, Inc.*, 385 F. Supp. 2d 137, 143 (D.P.R. 2005).

In this case, Plaintiff misjudged the distance between the final step and the ground. There was no involvement by the flight or cabin crew in her judgment of the space at issue, and there is no allegation that the fall related to the operation of the aircraft.  As discussed above, Plaintiff's chief argument is that British Airways personnel could have told Plaintiff about the height difference between the final step and those that preceded it.  But the mere ability to have informed a passenger about a standard condition on a fully functional piece of equipment does

---

[6] In *Maxwell*, a passenger was injured when liquor bottles fell from an overhead bin.  The court held that this event was related to an aircraft's operations because stowage is completed "under the supervision of the cabin crew who are responsible for securing the bins before takeoff."   *See Maxwell*, 122 F. Supp. 2d at 213.

not amount to commission or facilitation of a tort as required by the jurisprudence of this Court. Additionally, there is no suggestion that Plaintiff asked for assistance or guidance down the steps and was denied that request.   Ms. Burnett also testified that crewmembers made an announcement that passengers would not be disembarking via a jet bridge, and advised passengers to "watch [their] step," fulfilling rather than neglecting any obligation Plaintiff may argue existed.  *See* Burnett Dep. at 17:4-23, 20:9-11.

Finally, and most importantly, Plaintiff makes no contention that the mobile staircase was operating abnormally or malfunctioned at the time of the incident as is required to establish an "accident" under the Montreal Convention.  *See Goodwin*, 2011 WL 3475420, at *4.  Indeed, the stairs were in good working order and were "correctly positioned" at the time of the incident. *See* Pitt Dep. at 8:20-25.  A formal inspection conducted shortly thereafter confirmed that there was no equipment failure or malfunction of the stairway, and that "[t]here was nothing wrong with them.  They were as they were meant to be."  *See* Pitt Dep. at 31:3-13.  Additionally, the Cabin Service Director of the flight, Sean Hinnigan, wrote in his report that the steps were in not defective and that their positioning appeared appropriate (*see* Battista Decl. Exhibit G, at 11.); he testified that "everything was serviceable, there was nothing abnormal."  *See* Hinnigan Dep. at 12:16-13:3.

Plaintiff's own expert, Mr. Phillips, conceded that Plaintiff has no evidence of any abnormal operation of the mobile staircase, such as its operation or positioning against the aircraft:

> Q. Is there anything that you can point to in Exhibit 5 that shows that BA should have set up the stairs differently?
>
> A. Is there a way to zoom in here?
>
> Q. Yes.

A. Okay. As far as I can see, no….

*See* Phillips Dep. at 32:7-12; *see also* Photographs Identified in Phillips Deposition as Exhibit 5, attached as Exhibit N to the Battista Decl.  He further testified:

Q. Did you have any evidence that the way the stairs were positioned were incorrect?

A. I do not. Again, I -- I wasn't there. I don't know how it was set up. And, again, in the inspection, I was not there for the inspection either.

*See* Phillips Dep. at 112:2-7.

When Mr. Phillips was asked directly "[d]o you have any evidence to suggest that the way that British Airways operated the stairs [was] incorrect?" Mr. Phillips responded "I do not." Phillips Dep. at 112:13-16.

In fact, the only answer Mr. Phillips had to the question of the operation of the stairs was that British Airways failed to warn of the deeper step.

Q. But you can't point to anything specific that BA did when they set up the air stairs that was incorrect?

A. They failed to warn that that step was bigger than the rest.

Q. I'm sorry. When I say "set up the air stairs." I mean from an operational standpoint. Excuse me. Positioning the air stair – stairs, securing the air stairs. That kind of . . . thing.

A. I do not have any evidence towards that.

Phillips Dep. at 123:1-12. All incident reports and the testimony of Plaintiff's own expert confirms that the staircase was setup and functioning exactly as it should have been, *i.e.*, without any malfunctions or abnormalities.

Accordingly, Plaintiff cannot demonstrate that the incident related to an abnormality in the operation of the aircraft as required by this Court to prove an "accident" under the Convention.   For these reasons, Plaintiff cannot show that she was injured as a result of an

"accident."   Therefore, British Airways cannot be liable under the Montreal Convention for Plaintiff's injuries as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant British Airways respectfully requests that this Court grant its Motion in its entirety, and enter judgment in its favor.

Dated: August 11, 2020

CONDON & FORSYTH LLP

By: _____

Anthony U. Battista (*pro hac vice*)
abattista@condonlaw.com
Marissa N. Lefland (*pro hac vice*)
mlefland@condonlaw.com
Samantha Holloway (*pro hac vice*)
sholloway@condonlaw.com
7 Times Square
New York, New York 10036
Telephone:  (212) 894-6700
Facsimile:  (212) 370-4453

*and*

MCGOWAN S & LAVIN
Owen P. McGowan – BBO # 550423
opm@mcgowanassociateslaw.com
Christopher J. Greeley – BBO #670305
cjg@mcgowanassociateslaw.com
80 Washington Street, C20
Norwell, MA 02061
Telephone:  (781) 261-9977

## Certificate of Service

I hereby certify that a true and accurate copy of this document was filed through the Electronic Case Filing system, and will be served upon the attorney of record for each party registered to receive electronic service on this 11th day of August, 2020.

/s/ Anthony U. Battista
Anthony U. Battista