UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JENNIFER MOORE,

    Plaintiff,

    v.

BRITISH AIRWAYS PLC, a foreign corporation,

    Defendant.

Civil Action No. 19-30007-MGM

MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT
(Dkt. Nos. 33, 37)

December 28, 2020

MASTROIANNI, U.S.D.J.

I. INTRODUCTION

Plaintiff Jennifer Moore was traveling as a passenger on a British Airways flight when she suffered an injury while disembarking from the airplane. Plaintiff filed a claim against Defendant British Airways for damages under the Montreal Convention (Count One) and for negligence (Count Two). Defendant has moved for summary judgment on all claims. (Dkt. No. 33.) With her opposition, Plaintiff late-filed a cross-motion for partial summary judgment that the incident at issue was an "accident" under the Montreal Convention. (Dkt. No. 37.) The court heard arguments on the motions on December 2, 2020. For the reasons discussed, the court will grant Defendant's motion and deny Plaintiff's motion.

II. BACKGROUND

On September 14 and 15, 2018, Plaintiff was traveling as a passenger on British Airways Flight 202 from Boston, Massachusetts to London, England as part of round-trip transportation.

Upon arrival at London Heathrow Airport, due to a broken jet bridge, the passengers disembarked by portable stairs. British Airways and other air carriers commonly use a mobile staircase to disembark passengers when a jet bridge is unavailable. (Def.'s Statement of Material Facts (DSMF) ¶¶ 3–4, Dkt. No. 36; Pl.'s Counter-Statement of Material Facts (PSMF) ¶¶ 3–4, Dkt. No. 38.) A crew member was stationed at the top of the staircase and advised passengers to watch their step. (DSMF ¶ 5; PSMF ¶ 5.) With two pieces of hand baggage, Plaintiff proceeded down the more than 20 steps of the stairs, without incident, before reaching the last step. The last step was a bigger height than the previous steps, which Plaintiff was not expecting, causing her to lose her balance, fall, and injure her ankles. Her travel companion, Tammy Burnett, who had stepped down before Plaintiff had also been caught off guard by the last step and had tried to warn Plaintiff. No British Airway employees were assisting passengers at the last step, and no warning was given about the height difference of the last step.

After Plaintiff fell, a British Airways safety officer arrived at the scene and observed that the stairs were correctly positioned with a good grip on them. (Pitt Dep. Tr. (Ex. I) 8:20–25, Dkt. No. 34-9.) He testified that, by walking up and down the stairs, he observed the last step was "deeper than the other steps" and "noticeably slightly different." (*Id.* 16:1–17, 20:10–23.) The cabin service director of the flight testified that everything had been serviceable and nothing abnormal with respect to the mobile staircase. (Hinnigan Dep. Tr. (Ex. K) 12:16–13:3, Dkt. No. 34–11.) Plaintiff and her travel companion, Ms. Burnett, testified no precipitation, liquids, or garbage was on the staircase. (DSMF ¶¶ 12–13; PSMF ¶¶ 12–13.) Nor were passengers pushing or jostling each other while Plaintiff descended the staircase. (DSMF ¶ 14; PSMF ¶ 14.) A formal inspection of the staircase revealed that it was working as intended. (DSMF ¶ 19.) Although Plaintiff attempts to dispute this, she does not provide evidentiary support. (PSMF ¶ 19 (citing Moore Dep. Tr. (Ex. B), Dkt. No. 38-2; Phillips Expert Report (Ex. G), Dkt. No. 39-7).) Her deposition testimony and her

expert's report do not provide any support for the contention that the staircase, including the larger difference in the last step, was not working as intended. Plaintiff's position more accurately is that the design or operation of the staircase, as intended, was defective.

According to Plaintiff, the last step was 13 inches from the step to the ground and all other steps were 7.4 inches in height. Plaintiff points to the report of her expert, Chad Phillips, which explains that the British Standard 5395-1:2000 states the maximum rise people can be expected to negotiate safely is 8.7 inches. (Phillips Expert Report (Ex. G) 8, Dkt. No. 38-7.) Phillips testified the British Standard 5395 is voluntary guidance that British Airways is not required to follow. (Phillips Dep. Tr. (Ex. R) 56:21–57:13, Dkt. No. 40-3.) He also testified the guidance is for steps or stairs that are connected to a building, and not the mobile stairs at issue. (*Id.* 58:22–59:14.) And he explained he relied on the British Standard 5395 to support his opinions regarding the dangers of the physical attributes of the stairs at issue, and not as operational requirements. (*Id.* 59:3–14; Phillips Dep. Tr. (Ex. M) 68:2–10, Dkt. No. 34-13.) When shown photographs of the staircase taken after the incident, Phillips testified he could not identify anything that showed Defendant should have set up the staircase differently. (*Id.* 32:1–15.[1]) At the hearing, Plaintiff's counsel acknowledged that the standards cited by the expert were voluntary and none of them was directed to portable stairs but rather fixed stairs.

---

[1] "Q. And when you say "whole pictures" - -

A. The entire air stair. But from the looks of the pictures, the stabilizers are deployed, the stairs are in an elevated position and that's really what I can determine from these photographs.

Q. Is there anything that you can point to in Exhibit 5 that shows that BA should have set up the stairs differently?

A. Is there a way to zoom in here?

Q. Yes.

A. Okay. As far as I can see, no. The only thing I would say is the one picture doesn't even appear to show an air stair. It shows a passenger boarding bridge." (*Id.*)

### III. SUMMARY JUDGMENT STANDARD

To succeed on a motion for summary judgment "the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). The "evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* (internal quotation marks omitted). Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994). The nonmoving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir. 1994) (discussing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The nonmoving party "can forestall summary judgment by presenting definite, competent evidence demonstrating the existence of a genuine dispute about a material fact. . . . The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Murray v. Kindred Nursing Centers West LLC*, 789 F.3d 20, 25 (1st Cir. 2015).

### IV. DISCUSSION

*A.   Legal Standard*

"The Montreal Convention is a multilateral treaty, to which the United States and the United Kingdom are signatories, which governs international travel and limits liability for carriers" such as British Airways. *Dagi v. Delta Airlines, Inc.*, 961 F.3d 22, 27 (1st Cir. 2020) (internal footnotes omitted). Article 17(1) of the Convention, the relevant provision in this case, states that a "carrier is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that

4

the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention art. 17(1). "If an action for damages falls within one of the Convention's damages provisions, then the treaty provides the sole avenue for relief -- that is, the Montreal Convention preempts all local claims that fall within its scope, even if the claims are not cognizable (i.e., even if they do not satisfy the conditions for liability) under the Convention." *Dagi*, 961 F.3d at 27–28. In other words, "[t]he Convention is preemptive: a carrier is not subject to liability under local law for passenger injuries 'covered by' the Convention, that is, 'all personal injury cases stemming from occurrences on board an aircraft or in embarking or disembarking.'" *Acevedo-Reinoso v. Iberia Líneas Aéreas de España S.A.*, 449 F.3d 7, 11 (1st Cir. 2006) (quoting *El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 172 (1999) (discussing the Warsaw Convention[2])).

"If the Convention applies (and local law is thereby preempted), the next question is whether the carrier is liable under the Convention." *Acevedo-Reinoso*, 449 F.3d at 12. For liability under Article 17(1), the injury must have been sustained during an "accident." *Id.*; *Dagi*, 961 F.3d at 28. The First Circuit has held that to allege an "accident," (1) the claim must allege an occurrence which "arises from some inappropriate or unintended happenstance in the operation of the aircraft or airline" and, additionally, (2) a carrier's Article 17 liability is triggered only when "a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger."[3]

---

[2] "The Montreal Convention superseded the Warsaw Convention . . . . As a result, courts rely on case law arising from the Warsaw Convention in interpreting the Montreal Convention when the provisions of the two Conventions are essentially the same." *Dagi*, 961 F.3d at 27 n.4. Article 17 of Warsaw Convention is essentially the same as Article 17(1) of the Montreal Convention. *See* Warsaw Convention art. 17; Montreal Convention art. 17(1); *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 391 (2d Cir. 2004).

[3] Defendant contends that it is "a two-prong test to determine whether an 'accident' has occurred," and those two prongs are whether "(1) an unusual or unexpected event that was external to [the plaintiff] occurred, and (2) this event was a malfunction or abnormality in the aircraft's operation." Def.'s Mot. Summ. J. 11, Dkt. No. 33. Defendant cites an unreported memorandum and order by United States Magistrate Judge Bowler in *Goodwin v. British Airways PLC*, No. 09-10463-MBB, 2011 WL 3475420, at *3 (D. Mass. Aug. 8, 2011), which in turn cites Judge Lindsay's memorandum and order in *Gotz v. Delta Air Lines, Inc.*, 12 F. Supp. 2d 199, 201 (D. Mass. 1998). Although this formulation is similar to the

*Dagi*, 961 F.3d at 28 (quoting *Fishman v. Delta Air Lines, Inc.*, 132 F.3d 138, 143 (2d Cir. 1998); *Air France v. Saks*, 470 U.S. 392, 405 (1985), and citing *Tseng v. El Al Israel Airlines, Ltd.*, 122 F.3d 99, 103 (2d Cir. 1997), *rev'd on other grounds*, 525 U.S. 155 (1999)). The Supreme Court has held that whether a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger, so as to constitute an accident, is to be "flexibly" considered "after assessment of all the circumstances surrounding a passenger's injuries." *Saks*, 470 U.S. at 405. Courts have interpreted this inquiry to be an objective one, not a subjective inquiry based on the plaintiff's personal expectations.[4]

"In cases where there is contradictory evidence, it is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury." *Id.* at 405 (citing *DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193 (3rd Cir. 1978), which involved contradictory evidence on whether the aircraft pressurization was normal). "But when the injury indisputably results from the passenger's own internal reaction to the usual, normal, and expected operation of the aircraft, it has not been caused by an accident, and Article 17 of the Warsaw Convention cannot apply."[5] *Saks*, 470 U.S. at 406; *see Langadinos v. Am. Airlines, Inc.*, 199 F.3d 68, 70 (1st Cir. 2000) ("When the aircraft operates in a 'usual, normal, and expected" manner, a passenger is unable to recover.'" (quoting *Saks*, 470 U.S. at 406).)

---

First Circuit's, it is perhaps not exactly the same. This court therefore relies on the standard as articulated by the First Circuit.

[4] *See Gotz*, 12 F. Supp. 2d at 202 (rejecting that a plaintiff's subjective expectations control the issue); *Craig v. Compagnie Nationale Aire France*, No. 93-55263, 1994 WL 711916 (9th Cir. Dec. 21, 1994) ("[Plaintiff] asserts that slipping on her neighbor's shoes was unexpected. . . . While the district court held as a matter of law that the presence of shoes on the cabin floor was neither unexpected nor unusual, we affirm on a slightly different theory. It was plaintiff's burden to demonstrate that the presence of shoes on the floor between two seats was an unexpected or unusual event. In response to defendant's motion for summary judgment, the only evidence plaintiff offered to that effect was her declaration in which she stated her understanding, based on past experience, that shoes are supposed to be stowed . . . and her surprise that in this particular instance they were not. Plaintiff did not submit or point to any evidence (such as an affidavit from a flight attendant) that finding shoes on the floor between two seats was unusual or unexpected. . . . [H]er belief is not controlling. On this record, we hold that on a motion for summary judgment, absent a proffer by plaintiff of further supporting evidence, the court could conclude that the presence of shoes was not an unexpected event.")

[5] *See* supra note 2.

B.   *Analysis*

As an initial matter, Plaintiff's state law claim for negligence is preempted. There is no dispute that the incident in question occurred in the course of disembarking. Therefore, the Convention is the sole avenue for relief for Plaintiff. Plaintiff's counsel acknowledged as much at the hearing. Count II does not survive the summary judgment stage.

With respect to Plaintiff's claim under the Montreal Convention, Plaintiff has not offered evidence to support her contention that the use of a mobile staircase to disembark is an unexpected event. Although Plaintiff testified she does not remember ever using stairs to disembark from a plane, the inquiry is not about her personal, subjective expectations. *See Gotz*, 12 F. Supp. 2d at 202; *Craig v. Compagnie Nationale Air France*, No. 93-55263, 1994 WL 711916 (9th Cir. Dec. 21, 1994). Defendant, on the other hand, has provided evidence that using mobile staircase to disembark passengers is a routine operation in the industry, which Plaintiff has not disputed. (DSMF ¶¶ 3–4; PSMF ¶¶ 3–4.)

Next, there appears to be very little factual dispute regarding the conditions of the mobile staircase that was used to disembark passengers including Plaintiff. The stairs were functioning normally, positioned as intended, not wet, unobstructed, and with good grip. Passengers were not pushing or jostling down the stairs. The last step, down to the ground, was a noticeably larger height than any of the other steps. The issue is whether the use of a staircase with such height difference in the last step is an "inappropriate or unintended happenstance in the operation of the aircraft" and "an unexpected or unusual event or happening that is external to the passenger." *Dagi*, 961 F.3d at 28. Plaintiff has not pointed to any evidence that shows the staircase was operating in an unintended or inappropriate manner. All of the direct examinations of the staircase by Defendant's employees and indirect examination by way of photographs by Plaintiff's expert failed to find anything amiss with the operation of the staircase. Nor has Plaintiff provided evidence that the height of the last

step was unusual for mobile staircases. Although her expert referenced various standards and their recommendations, they are voluntary and for non-portable stairs. Furthermore, Plaintiff has not shown how those standards make the last step's height of the at-issue staircase atypical from other mobile staircases used to disembark passengers.

Plaintiff tries to compensate for her evidentiary deficiency by citing *Cuartas v. American Airlines, Inc.*, an unreported Indiana case. No. 1:10-cv-00390-LJM-TAB, 2012 WL 845543, at *1 (S.D. Ind. Mar. 12, 2012). But that decision is highly case-specific and certainly does not stand for the proposition that, as a matter of law, the use of a mobile staircase with a large last step to disembark constitutes an "accident" under the Montreal Convention, as Plaintiff suggests. In *Cuartas*, the record included facts different from those in this case: the defendant's policy required an announcement when stairs would be used; that policy may not have been followed; the stairs were wet and lacked traction strips; and some evidence in the record suggested jetways, not stairs, being the standard method of disembarking. *Cuartas*, 2012 WL 845543, at *3–*4.

Plaintiff's reliance on *Ugaz v. American Airlines, Inc.*, 576 F. Supp. 2d 1354 (S.D. Fla. 2008) also fails. In *Ugaz*, the Southern District of Florida court held that "there [was] simply no evidence whatsoever than an inoperable escalator [was] an 'unusual or expected event' sufficient to constitute an 'accident.' . . . [T]here were no foreign substances on the stairs, jostling passengers or other direct outside influence that caused the Plaintiff's fall apart from her own decision to climb an acknowledged inoperable escalator. In *Gezzi* and *McCarthy*, both of which deal with stairs, an outside force at least allegedly caused the plaintiffs' respective falls."[6] *Id.* at 1366. The court does not see how *Ugaz* in turn means that the incident in this case (lacking any pushing or foreign substances)

---

[6] In *Gezzi*, the accident was due to the presence of water on the stairs. *Gezzi v. British Airways PLC*, 991 F.2d 603, 605 (9th Cir. 1993). In *McCarthy*, the incident was not covered by the [Warsaw] Convention because it occurred well before embarking occurred. The question of whether the plaintiff was forced or not to use the escalator on which she fell was relevant only to the analysis of whether she in the process of embarking. *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 317–18 (1st Cir. 1995)

was an accident. Plaintiff argues it is because she had no choice (in contrast to the *Ugaz* plaintiff) but to disembark using a single defective staircase. But this argument returns to the question of whether the at-issue staircase and its last step, although characterized by Plaintiff as defective, was in fact objectively an "inappropriate or unintended happenstance in the operation of the aircraft" and "an unexpected or unusual event or happening that is external to the passenger." Again, the court finds that Plaintiff has not presented evidence to support her contention that such was the case. At the hearing, Plaintiff's counsel argued that Defendant had not presented any evidence showing that the step height was normal. But it is Plaintiff, as the party bearing the ultimate burden of proof, who must "present definite, competent evidence to rebut the motion" once Defendant showed an absence of evidence to support Plaintiff's case. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991).

   For the reasons set forth above, Defendant's motion for summary judgment (Dkt. No. 33) is GRANTED and Plaintiff's cross-motion for partial summary judgment is DENIED (Dkt. No. 37). The clerk is directed to enter judgment for Defendant, and the case may now be closed.

   It is So Ordered.

               /s/ Mark G. Mastroianni
               MARK G. MASTROIANNI
               United States District Judge